UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

NORTH METRO HARNESS INITIATIVE LLC, d/b/a Running Aces,

    Plaintiff,

v.

MICHAEL BEATTIE, in his individual and official capacities, et al.,

    Defendants.

Case No. 24-CV-1369 (PJS/LIB)

ORDER

---

Hamish P.M. Hume, David M. Lehn, William J. Harvey, Jessie Panuccio, BOIES SCHILLER FLEXNER LLP; Surya Saxena, Chad A. Blumenfield, Erin Emory, GREENE ESPEL PLLP, for plaintiff.

Joshua T. Peterson, Allison J. Mitchell, Casey L. Matthiesen, FAEGRE DRINKER BIDDLE & REATH LLP, for defendants Michael Beattie, Craig Beaulieu, Leana DeJesus, Dustin Goslin, Scott Hanson, Ryan McGrath, Joe Nayquonabe, Jr., Lon O'Donnell, Shawn O'Keefe, Dayna Pearson, Robert Sawyer, Les Schmolke, and Ronda Weizenegger.

Joseph F. Halloran, James K. Nichols, THE JACOBSON LAW GROUP, for defendants Shelley Buck, Constance Campbell, Michael Childs, Jr., Michael Heavner, Michael Jankoviak, Grant Johnson, Johnny Johnson, Ronald Johnson, Kevin McNair, and Valentina Mgeni.

Greg S. Paulson, Philip M. Brodeen, BRODEEN & PAULSON PLLP, for defendants Keith Anderson, Lori Colling, Ashley Cornforth, Rebecca Crooks-Stratton, Don Damond, Lee Dillard, Alison Fogarty, Tim Genia, Angela Heikes, Noah Hirsch, Kyle Kossol, Cole Miller, Kyle Peterson, Sam Rook, Charles Vig, and Dennis Walker.

Plaintiff North Metro Harness Initiative LLC, d/b/a Running Aces ("Running Aces"), operates an entertainment complex, which includes a casino, a racetrack, and a restaurant. Running Aces alleges that five tribal casinos in Minnesota are offering (or have offered) certain types of illegal gaming. Each of these casinos is owned and operated by a federally recognized Tribe: the Prairie Island Indian Community ("PIIC"); the Mille Lacs Band of Ojibwe (through its economic-development corporation, Mille Lacs Corporate Ventures ("MLCV")); or the Shakopee Mdewakanton Sioux Community ("SMSC").[1]

Running Aces did not sue the Tribes, however, presumably because the Tribes are immune from suit. Instead, Running Aces named dozens of current and former employees and officials associated with the casinos in both their individual and official capacities. Running Aces sought declaratory and injunctive relief—as well as treble damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d)—from these individuals for the financial harm that the non-party Tribes have caused to Running Aces by offering the illegal forms of gaming at their casinos.

---

[1] The Mille Lacs Band of Ojibwe is a band, or affiliate, of the Minnesota Chippewa, which is a federally recognized tribe. Am. Compl. ¶ 122. For ease of reference, the Court will refer to the PIIC, the Mille Lacs Band, and the SMSC collectively as the "Tribes."

Defendants moved to dismiss Running Aces' amended complaint on numerous grounds, including under Fed. R. Civ. P. 12(b)(7) for failure to join a party required under Fed. R. Civ. P. 19. The Court agreed with defendants that the Tribes are required parties that cannot be joined and in whose absence the case should be dismissed. ECF No. 85; *see also* Fed. R. Civ. P. 19.

This matter is before the Court on Running Aces' Fed. R. Civ. P. 59(e) motion to alter or amend the judgment for the purpose of allowing Running Aces to file a second amended complaint. For the reasons that follow, the motion is denied.

### A. Standard of Review

As a general matter, under Fed. R. Civ. P. 15(a)(2), a court should "freely give leave [to amend a pleading] when justice so requires." That said, "[a] motion for leave to amend *after* dismissal is subject to different considerations than a motion *prior* to dismissal." *Mountain Home Flight Serv., Inc. v. Baxter Cnty.*, 758 F.3d 1038, 1045 (8th Cir. 2014) (emphasis added). A court cannot altogether ignore Rule 15(a)(2) considerations in the post-judgment context, but "such [post-judgment] motions are disfavored." *U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009). To succeed, the post-judgment motion must be "consistent with the stringent standards governing the grant of Rule 59(e) . . . relief." *United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 743 (8th Cir. 2014). "Unexcused delay is sufficient to justify the court's denial if the party is

seeking to amend the pleadings after the district court dismissed the claims it seeks to amend, particularly when the plaintiff was put on notice of the need to change the pleadings before the complaint was dismissed." *Uradnik v. Inter Fac. Org.*, 2 F.4th 722, 727 (8th Cir. 2021) (quoting *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 804 (8th Cir. 2013)); *see also Par v. Wolfe Clinic, P.C.*, 70 F.4th 441, 449 (8th Cir. 2023) (same).

### B. Running Aces' Motion

As noted, the Court dismissed this action under Fed. R. Civ. P. 12(b)(7) after finding that the Tribes were required parties. In particular, the Court rejected Running Aces' argument that, because this is an *Ex parte Young* action, the absent sovereigns' interests would be adequately protected by the individual defendants. As the Court explained, this is not a typical *Ex parte Young* action because the individual defendants face the threat of extraordinary personal liability under RICO and, consequently, their individual interests differ significantly from those of the absent Tribes. ECF No. 85 at 10–15.

Running Aces proposes to fix this problem by splitting up its claims for prospective equitable relief, on the one hand, and damages, on the other hand. Specifically, in its proposed second amended complaint, Running Aces brings only official-capacity claims for prospective equitable relief against the SMSC defendants,

and only individual-capacity claims for damages against the PIIC and MLCV defendants.

This attempt comes too late. More than five months before the Court dismissed its amended complaint, Running Aces was put on notice of the conflict of interest facing the defendants as a result of Running Aces' decision to seek damages from them:

> Furthermore, the existing individual defendants are not authorized, and cannot be expected, "to articulate the [tribal] government[s'] position on [their] behalf in [their] absence," thus confirming that the prejudice to the absent sovereigns is "obvious." *Two Shields*, 790 F.3d at 799. Individual defendants' primary concerns are likely avoiding liability, not necessarily preserving Tribal sovereignty, protecting Tribal-State gaming compacts or defending the Tribes' overall gaming operations.

ECF No. 53 at 17 (Tribes' September 23, 2024, *amici curiae* brief); *see also* ECF No. 68 at 6 & n.2 (defendants' November 27, 2024, reply brief arguing that "Plaintiff is incentivizing Defendants to blame the Tribes for operation of Class III gaming, or even to compromise or settle against the Tribes' interest to avoid personal liability" and distinguishing other *Ex parte Young* cases on this basis).

The Eighth Circuit has repeatedly held that a district court may deny a Rule 59(e) motion to amend a complaint when, prior to dismissal, the plaintiff was put on notice of possible problems with its pleading but nevertheless forged ahead with that pleading rather than seeking to amend prior to entry of judgment. For example, in *Ash v.*

*Anderson Merchandisers, LLC*, 799 F.3d 957 (8th Cir. 2015), the district court dismissed the plaintiffs' initial complaint because plaintiffs did not adequately allege that the defendants were their employers. *Id.* at 960. The district court subsequently denied the plaintiffs' motion to amend their complaint—which they filed two days after judgment was entered—on the ground that the plaintiffs "had inexcusably delayed in properly requesting leave to amend." *Id.* at 963. The Eighth Circuit affirmed:

> The defendants' motion to dismiss, filed 47 days before the district court dismissed the case, put Ash and Jewsome on notice of the possible deficiencies in their original complaint. They had the opportunity to request leave to amend at any time before the district court ruled on the motion to dismiss. *See* Fed. R. Civ. P. 15(a)(2). Instead, they chose to rest on their original complaint, and did not seek leave to amend until that complaint was found to be deficient. Asserting simply that their claim should be tested on the merits, Ash and Jewsome offer nothing to explain why their litigation decisions did not amount to undue delay, or why the resulting delay was otherwise excusable.

*Id.* at 963–64 (footnote omitted); *see also Par*, 70 F.4th at 449 ("Par inexcusably delayed filing the Rule 59(e) motion—waiting over five months after the motion to dismiss was filed, and almost a month after the district court dismissed the complaint.");*Uradnik*, 2 F.4th at 727 ("When the party knew of the need to change the pleadings and then had her claim dismissed, unexcused delay is sufficient to justify the denial of leave to amend." (cleaned up)); *Horras*, 729 F.3d at 805 (no abuse of discretion in denying post-

judgment motion to amend where the plaintiff never sought to amend until after dismissal despite being put on notice of problems with the complaint).

Here, Running Aces has even less excuse for its delay in seeking leave to amend. To begin with, unlike the *Ash* plaintiffs, Running Aces had already taken advantage of one opportunity to amend its complaint. More importantly, the difference between this case and an ordinary *Ex parte Young* action—a difference that was likely already obvious to Running Aces' able counsel—was expressly brought to Running Aces' attention toward the beginning of the parties' lengthy briefing schedule and well before Running Aces' response brief was due.[2] *See* ECF Nos. 22, 26. That difference was also thoroughly discussed at the February 13, 2025, hearing on the motion to dismiss. *See* ECF No. 81 at 215–21. The Court granted defendants' motion to dismiss on March 11, 2025. ECF No. 85. Thus, in contrast to the 47 days that the plaintiffs in *Ash* had to seek to amend their complaint, here Running Aces had 169 days between the filing of the Tribes' *amici* brief and the Court's dismissal of Running Aces' amended complaint. And, like the plaintiffs in *Ash*, Running Aces' only argument in favor of granting post-

---

[2]The normal briefing schedule under this District's local rules dictates that the opening brief be filed 42 days before the motion hearing. *See* D. Minn. L.R. 7.1(c). But the parties stipulated to a briefing schedule more than double that length, ECF No. 22, and briefing was complete several months before the hearing. (After the judge initially assigned to this case recused, the case was reassigned to the undersigned just a few days before the original hearing date, at which point briefing was already complete.)

judgment leave to amend is that it should be allowed to test its claims on the merits. The Court therefore denies Running Aces' motion on the basis of inexcusable delay.

Finally, the Court notes that Running Aces' proposed solution only compounds the problem that caused the Court to dismiss its first amended complaint. Under the proposed second amended complaint, the PIIC and MLCV defendants would continue to face the threat of crippling individual liability under RICO (as well as under other damages claims that Running Aces seeks to add). True, as Running Aces proposes to sue the PIIC and MLCV defendants only in their individual capacities, those defendants would no longer be put in the position of having to weigh their official responsibilities against their personal interests. But the reason the Court dismissed Running Aces' first amended complaint is that the individual defendants could not adequately represent the absent Tribes' interests. Needless to say, relieving the PIIC and MLCV defendants of any obligation they may have to consider the Tribes' interests does nothing to solve that problem. Moreover, the interests of those individual defendants would remain sharply at odds with the interests of the Tribes for whom they work (or worked). And there can be no question that imposing enormous financial liability on the individuals who operate PIIC's and MLCV's casinos—indeed, even the *threat* of such liability—is likely to severely hamper those Tribes' ability to operate their casinos, which are their economic lifeblood. In short, the second amended complaint would not solve the Fed.

R. Civ. P. 19 problem. *Cf. Maverick Gaming LLC v. United States*, 123 F.4th 960, 974 (9th Cir. 2024) (explaining that the federal defendants could not adequately defend the absent Tribe's interest in gaming because they "share an interest in the ultimate outcome of this case for very different reasons" (quoting *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th 934, 945 (9th Cir. 2022))), *pet. for cert. filed* (U.S. May 9, 2025) (No. 24-1161).

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiff's Fed. R. Civ. P. 59(e) motion to alter or amend the judgment [ECF No. 87] is DENIED.

Dated: August 15, 2025

/s/ Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court